107 F.3d 901
 323 U.S.App.D.C. 268, 1997 O.S.H.D. (CCH) P 31,328
 ACTION ON SMOKING AND HEALTH (ASH), Petitioner,
v.
DEPARTMENT OF LABOR, Occupational Safety and Health
Administration, et al., Respondents.
 No. 95-1615.
 United States Court of Appeals,
District of Columbia Circuit.
 March 11, 1997.
 
 Before: EDWARDS, Chief Judge, WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS and TATEL, Circuit Judges.[323 U.S.App.D.C. 269] On Petitioner's Suggestion for
 Rehearing In Banc.
 ORDER
 PER CURIAM.
 
 
 1
 Upon consideration of petitioner's Suggestion for Rehearing In Banc, the response thereto, and the absence of a request by any member of the Court for a vote, it is
 
 
 2
 ORDERED that the suggestion be denied.
 
 
 3
 A statement of Circuit Judge WALD concurring in the denial of rehearing in banc is attached.
 
 
 4
 WALD, Circuit Judge, concurring in the denial of rehearing in banc:
 
 
 5
 I concur in the denial of rehearing in banc because the panel's conclusion that the deadlines included in OSHA's Cancer Policy are not mandatory is correct. These deadlines are closely related to, and indeed refer to, the statutory deadlines contained in 29 U.S.C. § 655(b) (1994), to which we have previously held that the Secretary was not required to conform. See National Cong. of Hispanic American Citizens v. Usery, 554 F.2d 1196 (D.C.Cir.1977) (Hispanic I); National Cong. of Hispanic American Citizens (El Congreso) v. Marshall, 626 F.2d 882 (D.C.Cir.1979) (Hispanic II). Nonetheless, I am troubled by the panel opinion's failure to require OSHA to adhere to any timetable in promulgating a standard for secondhand smoke. As we made clear in Hispanic I and Hispanic II, the mere fact that statutory or regulatory deadlines are not mandatory does not mean that an agency is free to ignore them altogether, and indeed OSHA's dilatory behavior in regard to the field sanitation standard at issue in the Hispanic cases eventually led us to require the issuance of the standard. Hispanic I, 554 F.2d at 1199-1200; Hispanic II, 626 F.2d at 890-91; see also Farmworker Justice Fund, Inc. v. Brock, 811 F.2d 613, 623-33, vacated as moot, 817 F.2d 890 (D.C.Cir.1987). ASH first petitioned OSHA to regulate secondhand smoke twenty years ago, and we first ruled on an ASH petition asking for OSHA action on secondhand smoke in 1990. Now, seven years later, ASH is, in my opinion, entitled to more than an assurance from OSHA that "[f]ormulating a standard for indoor air quality remains 'one of the Agency's highest priorities,' " ASH v. Department of Labor, 100 F.3d 991, 994 (D.C.Cir.1996) (quoting OSHA's Statement of Regulatory Priorities), if the statutory and regulatory deadlines are to mean anything.
 
 
 6
 I also hope that the panel opinion will not be read to imply that the Secretary is free to disregard all of the regulations governing rulemaking contained in the Cancer Policy and not simply the Cancer Policy's regulatory deadlines. ASH argued that the Cancer Policy, in particular 29 C.F.R. § 1990.111(c) (1996), requires OSHA to develop standards for potential occupational carcinogens in individual rulemaking proceedings, and thus that the Secretary violated the Cancer Policy in treating secondhand smoke as part of a massive rulemaking for indoor air quality contaminants generally. The panel's determination that the Cancer Policy deadlines are "aspirational," without more, is not a sufficient basis on which to conclude that the rest of the Cancer Policy was similarly without binding effect. This deadline determination relied heavily on our prior decisions in Hispanic I and Hispanic II, which were issued before the Cancer Policy came into existence, and the factors of resource constraints and scientific and technological complexity that OSHA maintains make adherence to the deadlines an impossibility are not implicated in the same fashion by the individual rulemaking requirement. The panel did reject ASH's individualized argument, saying that the decision on whether to treat a substance as part of such a general rulemaking proceeding is "a policy question for the agency, not the courts," ASH, 100 F.3d at 993, and noting that OSHA had "given good, logical reasons for dealing broadly with the subject of indoor air pollutants." Id. But of course it is well established that agency regulations have the force of law and an agency is not free to disregard its regulations at will. See United States v. Nixon, 418 U.S. 683, 695, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974); California Human Dev. Corp. v. Brock, 762 F.2d 1044, 1049 (D.C.Cir.1985). It might be the case that a reasonable interpretation of the individual rulemaking requirement does [323 U.S.App.D.C. 270] not preclude OSHA from developing standards for all indoor air quality contaminants in one proceeding, but I do not find such a determination in the opinion.
 
 
 7
 Thus, while I believe that the ultimate ruling in this case is the correct one, I am concerned that the opinion not be taken to signal any reprieve from an agency's obligation to proceed with due speed even when statutory and regulatory deadlines are not mandatory, or to follow its own regulations so long as they are in place.